Charles H. Chevalier
Christine A. Gaddis
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4611

OF COUNSEL:
Dennies Varughese, Pharm. D.
Paul A. Ainsworth
Adam C. LaRock
Josephine Kim
Lauren Watt
Christopher M. Gallo, Ph.D.
**STERNE, KESSLER, GOLDSTEIN &**
    **FOX P.L.L.C.**
1101 K Street, NW, 10th Floor
Washington, DC 20005
(202) 371-2600

*Attorneys for Plaintiffs*
*Catalyst Pharmaceuticals, Inc. and*
*SERB SA*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CATALYST PHARMACEUTICALS, INC. and SERB SA,<br><br>        *Plaintiffs*,<br><br>    v.<br><br>TEVA PHARMACEUTICALS, INC. and TEVA PHARMACEUTICALS USA, INC.,<br><br>        *Defendants*. | C.A. No. 2:23-cv-01190-MEF-JRA<br><br>**CONTAINS HIGHLY CONFIDENTIAL- ATTORNEYS' EYES ONLY INFORMATION** (*Filed Under Seal*) |

| | |
|---|---|
| CATALYST PHARMACEUTICALS, INC. and SERB SA, | |
| *Plaintiffs*, | |
| v. | C.A. No. 2:23-cv-01194-MEF-JRA |
| ANNORA PHARMA PRIVATE LIMITED, GRACE CONSULTING SERVICES, INC., HETERO LABS LIMITED, and HETERO USA, INC., | **CONTAINS HIGHLY CONFIDENTIAL- ATTORNEYS' EYES ONLY INFORMATION** (***Filed Under Seal***) |
| *Defendants*. | |

## PLAINTIFFS' SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................1

II.   BACKGROUND ..............................................................................2

      A.   The Covance Study ............................................................2

III.  ARGUMENT....................................................................................5

      A.   Dr. Pleasure misinterprets the findings of the Covance Study. ............5

      B.   Dr. Pleasure misrepresents the risk and frequency of misclassification. .........................................................9

           1.   Genotyping.................................................................9

           2.   Phenotyping .............................................................13

      C.   Dr. Pleasure ignores the claim language. ............................14

IV.   CONCLUSION..............................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Dow Chem. Co. v. Nova Chems. Corp. (Canada)*,
  458 Fed. Appx. 910 (Fed. Cir. 2012).................................................................10

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  572 U.S. 898 (2014)...............................................................................................6

*Wyeth LLC v. AstraZeneca Pharms. LP*,
  No. 21-1338, 2024 WL 3665801 (D. Del. Aug. 6, 2024) .............................6, 10

## TABLE OF DISPUTED TERMS AND PROPOSED CONSTRUCTIONS

| Claim Term | Plaintiffs' Proposed Constructions | Defendants' Proposed Constructions |
|---|---|---|
| **The '088 Patent[1]** | | |
| "solvate"<br><br>Claim 1 of the '088 Patent | Not Indefinite.<br><br>*Plain and ordinary meaning*: "the compound formed by the interaction of a solvent and a solute" | Indefinite.<br><br>(Dependent claims 2, 3, 6, and 7 are therefore also indefinite.) |
| "complex"<br><br>Claim 1 of the '088 Patent | Not Indefinite.<br><br>*Plain and ordinary meaning:* "any free-standing structure in which the interacting species maintain a weak association by means of noncovalent bonds, thereby retaining much of their individual chemical entities" | Indefinite.<br><br>(Dependent claims 2, 4, 6, and 7 are therefore also indefinite.) |

---

[1] The disputed terms and proposed constructions of U.S. Patent No. 10,626,088 ("the '088 patent") remain at issue in *Catalyst Pharmaceuticals, Inc., et al. v. Teva Pharmaceuticals, Inc.*, et al., C.A. No. 2:23-cv-01190-MEF-JRA, *Catalyst Pharmaceuticals, Inc., et al. v. Annora Pharma Private Limited, et al.*, C.A. No. 2:23-cv-01194-MEF-JRA, and *Catalyst Pharmaceuticals, Inc., et al. v. Lupin Ltd., et al.*, C.A. No. 2:23-cv-01197-MEF-JRA.

| Claim Term | Plaintiffs' Proposed Constructions | Defendants' Proposed Constructions |
|---|---|---|
| The '128A, '128B, '331, and '332 Patents[2] | | |
| "a human patient who is a N-acetyl transferase 2 (NAT2) slow acetylator"<br><br>Claim 1 of the '128A Patent | Not Indefinite.<br><br>*Plain and ordinary meaning:* "a human patient who metabolizes 3,4-DAP slowly" | Indefinite.<br><br>(Dependent claims 2–20, 22, 23, 25, and 26 are therefore also indefinite.) |
| "a human patient who is a NAT2 slow acetylator"<br><br>Claims 21, 24, and 27 of the '128A Patent | Not Indefinite.<br><br>*Plain and ordinary meaning:* "a human patient who metabolizes 3,4-DAP slowly" | Indefinite.<br><br>(Dependent claims 2–20, 22, 23, 25, and 26 are therefore also indefinite.) |
| "wherein the patient has two NAT2 slow alleles"<br><br>Claim 1 of the '128B Patent | Not Indefinite.<br><br>*Plain and ordinary meaning:* "wherein the patient has two NAT2 slow alleles" | Indefinite.<br><br>(Dependent claims 2–17 are therefore also indefinite.) |
| "each NAT2 slow allele is a NAT2*5, *6, *7, or *14 allele"<br><br>Claim 1 of the '128B Patent | Not Indefinite.<br><br>*Plain and ordinary meaning:* "each NAT2 slow allele is a NAT2*5, *6, *7, or *14 allele" | Indefinite.<br><br>(Dependent claims 2–17 are therefore also indefinite.) |

[2] The disputed terms and proposed constructions of U.S. Patent Nos. 11,060,128 ("the '128A patent"), 11,268,128 ("the '128B patent"), 11,274,331 ("the '331 patent"), and 11,274,332 ("the '332 patent) (collectively, "Garovoy Patents") remain at issue in *Catalyst Pharmaceuticals, Inc., et al. v. Teva Pharmaceuticals, Inc.*, et al., C.A. No. 2:23-cv-01190-MEF-JRA, and *Catalyst Pharmaceuticals, Inc., et al. v. Annora Pharma Private Limited, et al.*, C.A. No. 2:23-cv-01194-MEF-JRA.

| Claim Term | Plaintiffs' Proposed Constructions | Defendants' Proposed Constructions |
|---|---|---|
| "a human patient diagnosed with LEMS having two N-acetyl transferase 2 (NAT2) fast alleles"<br><br>Claim 1 of the '331 Patent | Not Indefinite.<br><br>*Plain and ordinary meaning:*<br>"a human patient diagnosed with LEMS having two N-acetyl transferase 2 (NAT2) fast alleles" | Indefinite.<br><br>(Dependent claims 2-18 are therefore also indefinite) |
| "a human patient diagnosed with LEMS having two NAT2 fast alleles"<br><br>Claims 19 and 27 of the '331 Patent | Not Indefinite.<br><br>*Plain and ordinary meaning:*<br>"a human patient diagnosed with LEMS having two NAT2 fast alleles" | Indefinite.<br><br>(Dependent claims 20-26, and 28 are therefore also indefinite) |
| "human patient diagnosed with LEMS having two N-acetyl transferase 2 (NAT2) slow alleles"<br><br>Claim 1 of the '332 Patent | Not Indefinite.<br><br>*Plain and ordinary meaning:* "human patient diagnosed with LEMS having two N-acetyl transferase 2 (NAT2) slow alleles" | Indefinite.<br><br>(Dependent claims 2–17 are therefore also indefinite.) |
| "human patient diagnosed with LEMS having two NAT2 slow alleles"<br><br>Claims 18, 21, and 24 of the '332 Patent | Not Indefinite.<br><br>*Plain and ordinary meaning:* "human patient diagnosed with LEMS having two NAT2 slow alleles" | Indefinite.<br><br>(Dependent claims 19–20, 22–23, and 25–26 are therefore also indefinite.) |

## I.    INTRODUCTION

Defendants' Responsive Claim Construction Brief argued that the so-called

████████ Study[3] proves that the claims of the '128A, '128B, '331, and '332 patents

are invalid as indefinite ████████████████████████████████████████

████████████████ The ███████ Study data and conclusions contradict

Defendants' argument. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████. ████████████████████

████████████████████████████████████████

████████████████████████████████████████. Put

simply, the ████████ Study does not show that the claims of the '128A, '128B,

'331, and '332 patents lack reasonable certainty. Instead, it shows that ████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████

Plaintiffs submit this Supplemental Claim Construction Brief in accordance

---

[3] ████████████████████████████████████████
████████████████████████████████████████
████████████████████████ filed under seal as Defendants'
Exhibit 21 (Dkt. No. 81-2).

with the Court's Letter Order, *see* Dkt. No. 141[4], and the briefing schedule set forth in the Court's subsequent Text Order, *see* Dkt. No. 147. As further detailed below, Defendants' arguments are unsupported by the actual findings of the ████ Study, and nothing in the study overcomes the proffered intrinsic and extrinsic evidence supporting definiteness of the disputed terms.

## II.    BACKGROUND

### A.    The ████ Study

The ████ Study is dated July 16, 2015, several years after the June 30, 2011 priority date of the Garovoy Patents. Dkt. No. 81-2 (Defs.' Ex. 21, ████ Study) at 3 (CATA_FIRD-0203379–421 at CATA_FIRD-0203381). The study was not publicly available, nor was it even peer reviewed. *See* Declaration of Lauren Watt in Support of Plaintiffs' Supplemental Claim Construction Brief ("Suppl. Watt Decl."), Ex. 39 ("Pleasure Suppl. Tr.") at 11:2–11. It also is not clear who wrote the study or the level of experience of the authors (*i.e.*, whether they meet either party's proposed definition of a person of ordinary skill in the art). *Id*. at 34:14–18, 35:5–16. Thus, the ████ Study is not prior art nor have

---

[4] For consistency and clarity in this Brief, Plaintiffs will cite only to documents filed in *Catalyst Pharmaceuticals, Inc., et al. v. Annora Pharma Private Limited, et al.*, C.A. No. 2:23-cv-01194-MEF-JRA, which are duplicative of the documents filed in *Catalyst Pharmaceuticals, Inc., et al. v. Teva Pharmaceuticals, Inc.*, et al., C.A. No. 2:23-cv-01190-MEF-JRA.

Defendants shown that it is credible evidence of a skilled artisan's understanding of the claim language.

The purpose of the ██████ Study was ████████████████████ ████████████████████████████████████ ████████████████████████████████ ██████████████████████████ Dkt. No. 81-2 (Defs.' Ex. 21, ██████ Study) at 7 (CATA_FIRD-0203379–421 at CATA_FIRD-0203385). ███████████████ ████████████████████████ ██████████████████████████████████ ██████████████ *Id*. at 5 (CATA_FIRD-0203379–421 at CATA_FIRD-0203383). ██████████████████████████ ████████████████████████ ████████████████████████ *Id*. at 6 (CATA_FIRD-0203379–421 at CATA_FIRD-0203384). ██████████ ████████████████████████████ ████



*Id*. at 14 (CATA_FIRD-0203379–421 at CATA_FIRD-0203392).

As the ■■■■■ Study explains, ■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

███████████████████████████████████████████

███████████████████████ *Id.* at 15 (CATA_FIRD-0203379–421 at

CATA_FIRD-0203393). ██████████████████████████

███████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

## III.    ARGUMENT

### A.    Dr. Pleasure misinterprets the findings of the ██████ Study.

In order to support his claim that "genotyping and phenotyping methods can

result in different conclusions with respect to a patient's acetylation status,"

Dr. Pleasure ignores the actual data provided in the study. *See* Dkt. No. 81-8 (Resp.

Pleasure Decl.) at ¶ 20.

Dr. Pleasure points to two subjects in the ██████ Study, ██████████████

████████████████████████████████████

████████████████████████████████

████████ *Id.* at ¶ 21; *see also* Dkt. No. 81-2 (Defs.' Ex. 21, ██████ Study)

at 14–16, Fig. 3 (CATA_FIRD-0203379–421 at CATA_FIRD-0203392–394). This

is misleading at best.

Standard genotyping assays rely upon the presence of certain combinations of genetic sequences to determine whether an individual has two fast alleles, two slow alleles, or one of each. But such assays are not able to resolve, in all cases, whether an individual's particular genetic combination is the result of having mutations present on a single allele or on both alleles, resulting in an ambiguous classification. As one peer-reviewed study demonstrated in a population of 1312, the risk of ambiguous classification was about 0.8%. Suppl. Watt Decl., Ex. 40 ("Agúndez") at 1390–1391 (CATA_FIRD-2016722–726 at CATA_FIRD-2016722–723). This is not because there is ambiguity in what constitutes a slow or fast allele. It is because there are scientific limits on a standard genotyping assay's capability to determine the location of identified genetic mutations. *See Nautilus, Inc. v. Biosig Instruments, Inc.,* 572 U.S. 898, 910 (2014) (noting that the indefiniteness standard is "not greater than is reasonable, having regard to their subject-matter"); *see also Wyeth LLC v. AstraZeneca Pharms. LP*, No. 21-1338, 2024 WL 3665801, at *13 (D. Del. Aug. 6, 2024) (finding that "[t]he relevant question with respect to the definiteness inquiry thus is not whether a given test could be reasonably certain to detect the presence of the T790M mutation, but rather whether a POSA could be reasonably certain that the T790M mutation, *if detected*, means that the NSCLC is 'g/e resistant'").



█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████ *See* Dkt. No. 81-2 (Defs.' Ex. 21, ██████ Study) at 14–15 (CATA_FIRD-0203379–421 at CATA_FIRD-0203392–93) (emphasis added); Suppl. Pleasure Tr. at 47:11–17 (████████████████████████████████████). ████████

█████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████ Dkt. No. 81-2 (Defs.' Ex. 21, ██████ Study) at 19 (CATA_FIRD-0203379–421 at CATA_FIRD-0203397).

In his responsive declaration, Dr. Pleasure fails to even mention ██

███████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████ .



Dkt. No. 81-8 (Resp. Pleasure Decl.) at ¶ 21 (quoting Dkt. No. 81-2 (Defs.' Ex. 21,

██████ Study) at 16, Fig. 3a (CATA_FIRD-0203379–421 at CATA_FIRD-

0203394) (annotated)). Indeed, the legend for Figure 3a clarifies that it shows only

████████████████████████████████████████████ Dkt. No.

81-2 (Defs.' Ex. 21, ██████ Study) at 16, Fig. 3a (CATA_FIRD-0203379–421 at

CATA_FIRD-0203394) (emphasis added).

By ignoring Figure 3b, Dr. Pleasure failed to acknowledge that the study

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

███████



Dkt. No. 81-2 (Defs.' Ex. 21, ███████ Study) at 16, Fig. 3b (CATA_FIRD-0203379–421 at CATA_FIRD-0203394) (annotated). Ultimately, the study determined that ████████████████████████████████████ ████████████████. Thus, contrary to Dr. Pleasure's characterization (at Dkt. No. 81-8 (Resp. Pleasure Decl.) at ¶ 21), there was no misclassification.

### B. Dr. Pleasure misrepresents the risk and frequency of misclassification.

#### 1. Genotyping

In misreading the results of the ██████ Study, Dr. Pleasure tries to argue that the lack of absolute precision by standard genotyping and phenotyping methods renders the meaning of the terms "NAT2 slow acetylator," "NAT2 slow alleles," and "NAT2 fast alleles" indefinite, despite the study's own use of those

terms. *See, e.g.*, Dkt. No. 81-2 (Defs.' Ex. 21, ███████ Study) at 5–6, 14 (CATA_FIRD-0203379–421 at CATA_FIRD-0203383–384, CATA_FIRD-0203392). That there were ████████████████████████ does not mean that a skilled artisan would have misclassified those subjects or would have been unable to determine their correct acetylation status. Instead, a skilled artisan, seeing that ███████████████████████████████████████

████████████████████████████████████████

████████████████ That additional testing may be needed in rare instances does not render the disputed terms indefinite. *See Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 458 Fed. Appx. 910, 919 (Fed. Cir. 2012) (finding "[t]he claims are not indefinite even if some experimentation is required to determine the exact [scope of the claims]"); *Wyeth LLC v. AstraZeneca*, 2024 WL 3665801, at *14 (holding that the question of which tests best or most accurately pick up on the presence of T790M does nothing to cast doubt on whether a skilled artisan would understand the disputed claim term "g/e resistance" and that debating the multiple test methods would be akin to "arguing that the term 'COVID-19' would be indefinite simply because an at-home rapid test might produce less reliable results than a state-of-the-art lab test.")

Agúndez, cited in the ███████ Study, explains why genotyping may sometimes identify multiple possible diplotypes with both slow and fast alleles.

*See* Dkt. No. 81-2 (Defs.' Ex. 21, ███████ Study) at 15 (CATA_FIRD-0203379–421 at CATA_FIRD-0203393) (citing Agúndez (CATA_FIRD-2016722–726). Agúndez states that certain alleles such as NAT2*12A, *12B, *12C, *12D, and *13 contain mutations but do not lead to a slow acetylation status, *i.e.*, they do not cause a reduction in enzyme function. Agúndez at 1391 (CATA_FIRD-2016722–726 at CATA_FIRD-2016723). Thus, the NAT2*12 and NAT2*13 have mutations at some of the same positions as slow alleles like NAT2*5 and NAT2*6. As of the priority date of the Garovoy Patents, a skilled artisan would have been aware of the nature of NAT2*12 and NAT2*13 and that they are associated with a rapid acetylator status, and when ███████████████—a skilled artisan would have known to conduct a phenotype test in order to identify the correct diplotype.

Importantly, the scenario presented in the ██████ Study is not common, particularly as NAT*12 and NAT*13 are not common alleles. *See*, *e.g.* Dkt. No. 63-15 (Defs.' Ex. 15, Garcia-Martin) at 489, 492. Agúndez found that these alleles accounted for only 2.8% of the genes analyzed, and only 4.6% of the subjects involved in the study carried these allele combinations with a slow allele. Agúndez at 1391 (CATA_FIRD-2016722–726 at CATA_FIRD-2016723). Additionally, a skilled artisan would have appreciated the differences in frequencies of the NAT2 haplotype in different ethnic populations and would have

known when variant alleles were more likely to be present. Suppl. Pleasure Tr. at 26:2–7.

Agúndez also stated that "most genotyping procedures simultaneously analyze both alleles, paternal and maternal, for each individual," and therefore "certain haplotypes containing rare SNP combinations can be ambiguous when they occur in heterozygosity with a rapid allele, a situation that may lead to misclassification." Agúndez at 1391 (CATA_FIRD-2016722–726 at CATA_FIRD-2016723); *see also* Dkt. No. 81-8 (Resp. Pleasure Decl.) at ¶ 23 (similar statement made by Dr. Pleasure). But this scenario would not prevent a skilled artisan from being able to determine whether a patient was a slow or rapid acetylator, as they would know to conduct a phenotype test if the genotype results were unclear for a particular patient. In other words, a skilled artisan would know that there was a risk of misclassification due to the presence of both rapid and slow alleles and would take steps to seek further confirmation. Moreover, these rare SNP combinations only occurred in 0.9% of genes studied in the Agúndez study, and only 0.3% of the individuals in the study group carried the combination with a rapid allele. Agúndez at 1391 (CATA_FIRD-2016722–726 at CATA_FIRD-2016723).

Agúndez further states that, of the full sequencing conducted of 2,624 haplotypes, only "[e]leven individuals (0.8%) were not correctly classified by the

most probable genotypes predicted by PHASE." Agúndez at 1393 (CATA_FIRD-2016722–726 at CATA_FIRD-2016725); *see also* Suppl. Pleasure Tr. at 22:22–25:14 (confirming that this study was trying to get to "the ends of the earth, so to speak, to figure out whether that's a discrepancy"). Ultimately, Agúndez states that "[a]s a general rule, haplotype prediction techniques seem to be adequate." Agúndez at 1393 (CATA_FIRD-2016722–726 at CATA_FIRD-2016725).

### 2. Phenotyping

Dr. Pleasure also relies on unsupported language in the ████████Study that ████████████████████████████████████████████████ ████████████ Dkt. No. 81-2 (Defs.' Ex. 21, ██████ Study) at 15 (CATA_FIRD-0203379–421 at CATA_FIRD-0203393). The study offers no data to support this statement. Suppl. Pleasure Tr. at 33:20–34:6. Further, Dr. Pleasure agreed that the ████████ Study does not contain data relating to any potential discrepancies between different substrates for NAT2 and phenotyping, as "[t]hat was not the point of the ██████ [S]tudy." *Id*. at 41:8–14. Dr. Pleasure has never provided any examples of substrates actually used for *in vivo* NAT2 phenotype testing that rendered contradicting test results—he has instead relied on *in vitro* examples of O-acetylation processes or carcinogens that would never be used *in vivo*. *See*, *e.g.*, Dkt. No. 81-8 (Resp. Pleasure Decl.) at ¶ 16. There is no evidence that any two substrates mentioned in the patents, or any substrates known to a skilled artisan as

of the priority date, would provide different results in an *in vivo* NAT2 phenotype test involving the same subjects.

### C.    Dr. Pleasure ignores the claim language.

Further, nothing in the ████████ Study contradicts or overcomes the plain language of the claims themselves. For example, Defendants assert that a skilled artisan would not know the meaning of the phrase "wherein the patient has two NAT2 slow alleles" as it appears in claim 1 of the '128B patent, but the claim language is clear as to what a NAT2 slow allele is:

> **wherein the patient has two NAT2 slow alleles,** each NAT2 slow allele is a NAT2*5, *6, *7, or *14 allele, and the total daily dose is about 7.5 mg to about 40 mg of 3,4-DAP, or an equivalent amount of a pharmaceutically acceptable salt thereof, optionally provided as a series of divided doses.

'128B patent, claim 1 (emphasis added, annotated). When asked about this claim language, Dr. Pleasure replied that the specification does not provide a definition of "slow for what purpose," extrapolating that the term could mean "slow for the purposes of running from this side of the room to the other" and ignoring that the term to be construed is not "slow" but "wherein the patient has two NAT2 slow alleles." Suppl. Pleasure Tr. at 83:17–84:19.

Additionally, Dr. Pleasure appeared to confuse genotype and phenotype testing, stating that "[a] wild-type allele could be -- could actually be a slow allele for some substrates and fast for others" even though the assessment of alleles in a

14

genotype test has nothing to do with substrates used for a phenotype test. *Id*. at 88:12–14. Further, when asked whether claim 1 of the '128B patent refers to phenotype at all—it does not—Dr. Pleasure strayed from the claim language, saying that "a POSA would be interested and assume that the patent is related to the metabolism of that drug in some way or another." *Id*. at 93:12–15. Dr. Pleasure is conflating the two methods in order to claim confusion where there is none.[5]

Similarly, in the '332 patent, Defendants dispute the meaning of the phrase "human patient diagnosed with LEMS having two N-acetyl transferase 2 (NAT2) slow alleles" in claims 1, 18, 21, and 24, but the dependent claims 2, 19, 22, and 25 specify the slow alleles "each comprise one or more of a 282T, 341C, 191A, 481T, 590A, or 857A mutation" and dependent claims 3, 20, 23, and 26 specify "the two NAT2 slow alleles each comprise a 282T, a 341C, or a 282T and a 341C mutation." Thus, at least for the dependent claims of '332 patent, "NAT2 slow alleles" is clearly defined by the presence of certain mutations.

## IV.  CONCLUSION

For the above reasons, the asserted claims of the Garovoy Patents are not indefinite, and Defendants' reliance on the ███████ Study fails to prove otherwise.

---

[5] Dr. Pleasure also seemed to confuse the indefiniteness standard with the written description standard, stating that it was his "recollection that the indefinite standard is to address whether the inventors are in possession of the patent…based on the four corners of the specification in the claims." Pleasure Tr. 94:20–95:3.

Dated:  December 23, 2024

s/ Charles H. Chevalier
Charles H. Chevalier
Christine A. Gaddis
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4611
cchevalier@gibbonslaw.com
cgaddis@gibbonslaw.com

OF COUNSEL:
Dennies Varughese, Pharm. D.
Paul A. Ainsworth
Adam C. LaRock
Josephine Kim
Lauren Watt
Christopher M. Gallo, Ph.D.
**STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.**
1101 K Street, NW, 10th Floor
Washington, DC 20005
(202) 371-2600
dvarughese@sternekessler.com
painsworth@sternekessler.com
alarock@sternekessler.com
joskim@sternekessler.com
lwatt@sternekessler.com
cgallo@sternekessler.com

*Attorneys for Plaintiffs*
*Catalyst Pharmaceuticals, Inc. and*
*SERB SA*

16

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2024, a copy of PLAINTIFFS'

SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF was electronically served

on all counsel of record via ECF notification and electronic mail.


Dated:  December 23, 2024          s/ Charles H. Chevalier
                                   Charles H. Chevalier
                                   **GIBBONS P.C.**
                                   One Gateway Center
                                   Newark, New Jersey 07102
                                   (973) 596-4611
                                   cchevalier@gibbonslaw.com

                                   *Attorneys for Plaintiffs*
                                   *Catalyst Pharmaceuticals, Inc. and*
                                   *SERB SA*