

**CHARLES H. CHEVALIER**
PARTNER
P: (973) 596-4611
F: (973) 639-6239
CCHEVALIER@FBTGIBBONS.COM

January 14, 2026

**VIA ECF (FILED UNDER SEAL)**
Honorable Michael E. Farbiarz, U.S.D.J.
Frank R. Lautenberg US Post Office &
Courthouse Building
2 Federal Square
Newark, New Jersey 07102

Re:     ***Catalyst Pharms. Inc., et al. v. Annora Pharma Private Ltd., et al.,***
        **Civil Action No. 2:23-cv-01194**

Dear Judge Farbiarz:

This firm, along with Sterne, Kessler, Goldstein & Fox P.L.L.C., represents Plaintiffs Catalyst Pharmaceuticals, Inc. and SERB SA (collectively, "Catalyst") in the above-captioned case. Per ECF Nos. 179 and 192, instructing the parties to "refer to the final pretrial order found at ECF No. [158] in matter 23-cv-00790 for proper form and content," Catalyst sets forth the following key factual and legal issues to be resolved at trial along with its views as to these issues. In addition, attached hereto are two trial exhibits Catalyst believes the Court should closely review in advance of the trial (*see* Appendix A).

## I.      Background

Catalyst is the holder of New Drug Application ("NDA") No. 208078, by which the FDA granted approval for Catalyst's Firdapse® (amifampridine) drug product. Amifampridine (3,4-diaminopyridine or 3,4-DAP) is a symptomatic treatment option for Lambert-Eaton Myasthenic Syndrome ("LEMS")—an autoimmune disease involving impairment of neuromuscular transmission and serious muscle weakness. The patents-in-suit include U.S. Patent Nos. 10,626,088 ("the '088 patent"), 10,793,893 ("the '893 patent"), 11,268,128 ("the '128A patent"), 11,268,128 ("the '128B patent"), and 11,274,332 ("the '332 patent"). Each patent is listed in the FDA's *Approved Drug Products with Therapeutic Equivalence Evaluations* (the "Orange Book") in connection with Catalyst's Firdapse drug product. The '088 patent is directed toward a particular impurity found in some drug products containing 3,4-DAP—a dimer of 3,4-DAP. The '893, '128A, '128B, and '332 patents are generally directed to methods of treating diseases with 3,4-DAP. In particular, the claims require that individuals who are slow metabolizers of 3,4-DAP be administered certain doses of 3,4-DAP.

Defendants Annora Pharma Private Limited, Grace Consulting Services, Inc., Hetero Labs Limited, and Hetero USA, Inc. (collectively, "Hetero") submitted Abbreviated New Drug Application No. 218007 ("Hetero's ANDA"), which seeks approval to engage in the commercial manufacture, use, or sale of a generic version of Firdapse ("Hetero's ANDA Product") before expiration of the patents-in-suit.

The Honorable Michael E. Farbiarz, U.S.D.J.
January 14, 2026
Page 2

## II.    Key Factual and Legal Issues

### A.    Whether Hetero's proposed label promotes, encourages, or recommends administering 3,4-DAP to slow acetylators in the amounts claimed.

Hetero's ANDA Product infringes claims 1, 2, and 5–15, of the '893 patent, claims 1–7 and 9–28 of the '128A patent, claims 1, 3–4, and 11–17 of the '128B patent, and claims 1–26 of the '332 patent. In particular, it encourages, recommends, or promotes the performance of the treatment methods recited in these claims. *See Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*, 731 F.3d 1271, 1278–79 (Fed. Cir. 2013) ("What a generic applicant asks for and receives approval to market, if within the scope of a valid claim, is an infringement.") (citation omitted). By way of example and with respect to claim 13 of the '893 patent, for patients who are tested and confirmed to be *NAT2* slow acetylators, Hetero's proposed label instructs healthcare providers to administer the lowest recommended initial daily dose, which is 15 mg for adult patients if those patients are "[k]nown N-acetyltransferase 2 (NAT2) [p]oor [m]etabolizers." *See* App. A, Ex. 1 (JTX-141) (Hetero's proposed label); *see also* App. A, Ex. 2 (JTX-015) (Catalyst's Firdapse label). This unambiguous instruction promotes infringement of at least claim 13 of the '893 patent. Hetero's ANDA Product likewise encourages, recommends, or promotes the performance of the asserted claims of the '128A, '128B, and '332 patents. Hetero's non-infringement defense, in a nutshell, is that physicians will not follow Hetero's instructions. This argument has been rejected repeatedly by the Federal Circuit. *See Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, 1368 (Fed. Cir. 2017) ("[W]e have not required evidence regarding the general prevalence of the induced activity. … 'The label must encourage, recommend, or promote infringement.' … For purposes of inducement, 'it is irrelevant that some users may ignore the warnings in the proposed label.'") (citations omitted).

### B.    Whether the prior art inherently discloses the administration of 3,4-DAP to slow acetylators in the amounts claimed.

Hetero also challenges the validity of the '893, '128A, '128B, and '332 patents on various unavailing anticipation and obviousness grounds. It will not be able to meet its burden of proving invalidity by clear and convincing evidence. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95, 99 (2011). None of the alleged prior art explicitly or inherently discloses the administration of 3,4-DAP to slow acetylators in the claimed dosage amounts. For example, Hetero's invalidity challenges rely heavily upon the alleged EMEA 2010 reference.[1] However, neither EMEA 2010 nor the additional references relied upon by Hetero demonstrate that *any* individuals in *any* of the studies described in EMEA 2010 were *both* slow acetylators *and* received doses in the amounts claimed by the patents-in-suit. Because it lacks express evidence that slow acetylators were actually treated with 3,4-DAP in the amounts claimed, Hetero argues that it is *statistically likely* that this occurred. However, inherent anticipation requires more than possibilities and probabilities. *See Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 958 (Fed. Cir. 2014) ("A single prior art reference may anticipate without disclosing a feature of

---

[1] Hetero must establish that a relied-upon reference qualifies as prior art. To qualify, Hetero must show by clear and convincing evidence that the reference was sufficiently accessible to the public interested in the art before the relevant priority date. *See Weber, Inc. v. Provisur Techs., Inc.*, 92 F.4th 1059, 1067 (Fed. Cir. 2024); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1578 (Fed. Cir. 1996) ("[The accused infringer] must persuade the trier of fact by clear and convincing evidence that the [contested reference] was published prior to [the] invention date" to qualify as prior art).

The Honorable Michael E. Farbiarz, U.S.D.J.
January 14, 2026
Page 3

the claimed invention if such feature is *necessarily* present, or inherent, in that reference.") (emphasis added) (citation omitted).

To the extent Hetero relies on obviousness, its arguments fail for similar reasons. Moreover, a skilled artisan could not have been motivated to dose patients with 3,4-DAP based on whether they were slow metabolizers when it was entirely unknown how 3,4-DAP was metabolized. Hetero's suggestion to the contrary is based entirely on hindsight. *In re Kubin*, 561 F.3d 1351, 1359 (Fed. Cir. 2009) ("In such circumstances, where a defendant merely throws metaphorical darts at a board filled with combinatorial prior art possibilities, courts should not succumb to hindsight claims of obviousness."). In short, nothing in the alleged prior art discloses or even suggests the claimed methods of the '893, '128A, '128B, and '332 patents.

### C.    Whether Hetero's ANDA Product has the claimed dimer.

Hetero's ANDA Product infringes claim 1 of the '088 patent because it contains the claimed 3,4-DAP dimer. Catalyst will show at trial that Hetero's ANDA, internal test records, and independent testing by Catalyst's expert show that Hetero's ANDA Product contains the claimed dimer. Hetero offers no evidence in rebuttal, and instead challenges whether the product samples it produced were representative of its ANDA drug product. Moreover, Hetero cannot explain away its own testing that confirms the testing by Catalyst's expert.

### D.    Whether Hetero's alleged prior art discloses the claimed dimer.

Hetero alleges that claim 1 of the '088 patent is anticipated by the Raust reference, or, in the alternative, that it is rendered obvious by the combination of Raust and Berge. Hetero will not be able to meet its burden here either. Raust discloses laboratory experiments conducted with 3,4-DAP that purportedly resulted in the generation of certain impurities. However, Raust does not further characterize those impurities and there is no explicit disclosure of the claimed dimer. To prove that the 3,4-DAP dimer is inherent in Raust, Hetero's experts attempt to recreate the Raust experiments and then test the resulting product. The problem is that Hetero's expert modified the protocol described in Raust. As a consequence, the results of her experiments do not demonstrate that 3,4-DAP dimer was inherently disclosed in Raust. *See Allergan,* 754 F.3d at 958. Likewise, claim 1 of the '088 patent is not anticipated by the Do 2006 reference, nor is it rendered obvious through the combinations proposed with Do 2006. Like Raust, Do 2006 lacks an explicit disclosure of the claimed dimer, so Hetero relies on inherency to fill the gaps. But it does not back up its inherency arguments with any evidence to show that the compositions disclosed in Do 2006 contained the claimed dimer.

Hetero's obviousness arguments based on Raust or Do 2006 in combination with other references fail for the same reasons. Without evidence that the compositions of Raust or Do 2006 necessarily contained the claimed dimer, Hetero relies on hindsight to argue a skilled artisan would have been motivated to produce the claimed dimer using the processes disclosed in Raust or Do 2006. Without a valid reason to produce the claimed dimer, Hetero's obviousness theories fail.

The Honorable Michael E. Farbiarz, U.S.D.J.
January 14, 2026
Page 4

    **E.**    **Whether claim 1 of the '088 patent is invalid for lack of written description or enablement.**

Hetero also raises invalidity challenges under 35 U.S.C. § 112 relating to whether claim 1 of the '088 patent has adequate written description support in the specification and whether the inventors provided a sufficiently enabling disclosure. Neither of these arguments has merit.

With respect to written description, Hetero argues that claim 1 encompasses a broad genus because it is directed to dimers in the form "a salt, solvate, or complex, or a combination thereof." It then contends that because the working examples disclose a single species against a broad genus, the written description requirement is not met. This is not the law. The Federal Circuit has repeatedly "explained that an adequate written description requires a precise definition, such as by structure, formula, chemical name, physical properties, or other properties, of species falling within the genus sufficient to distinguish the genus from other materials." *GlaxoSmithKline LLC v. Banner Pharmacaps, Inc.,* 744 F.3d 725, 730 (Fed. Cir. 2014) (citation omitted). As in *Glaxo,* claim 1 is drawn to a chemical structure that is comprised of a dimer and also one or more additional chemical structures (a salt, a solvate, a complex, or a combination thereof). This description is more than sufficient to distinguish the claimed genus from other materials.

With respect to enablement, Hetero argues that claim 1 is so broad that it would require undue experimentation to practice the full scope of the claim. Hetero's principal evidence of lack of enablement is the unsubstantiated opinion of its expert that it would require undue experimentation to practice the full scope of claim 1. Such evidence is insufficient to demonstrate lack of enablement. *See Cephalon, Inc. v. Watson Pharms., Inc.,* 707 F.3d 1330, 1340 (Fed. Cir. 2013).

    **F.**    **Whether claim 1 of the '088 patent is invalid for lack of utility.**

Hetero challenges the validity of claim 1 of the '088 patent based on lack of utility. It contends that it lacks utility because the claims relate to an impurity found in a drug product, and impurities are undesirable. But "the bar for utility is not high." *Grunenthal GMBH v. Alkem Lab'ys Ltd.,* 919 F.3d 1333, 1345 (Fed. Cir. 2019) (citation omitted). Here, the utility of the invention of the '088 patent is that it allows users to identify impurities in 3,4-DAP drug products so they can be minimized and controlled. The fact that Hetero's own drug product contains a specification limiting the amount of the claimed dimer is highly relevant evidence of utility.

*    *    *

We thank Your Honor in advance for your consideration of the key factual and legal issues set forth above, as well as the materials attached in Appendix A. We are available at your convenience to the extent Your Honor has any questions.

                    Respectfully submitted,

                    s/ Charles H. Chevalier
                    Charles H. Chevalier
                    Director

The Honorable Michael E. Farbiarz, U.S.D.J.
January 14, 2026
Page 5

cc:      Counsel of Record (via e-mail)